## CIRCUIT COURT OF FAIRFAX COUNTY

SunTrust Bank

    v.

Wells Fargo Bank, N.A.

June 24, 2009

Case No. (Law) CL-2008-5711

BY JUDGE R. TERRENCE NEY

This matter came before the Court on May 20, 2009. Subsequent to a bench trial, the Court took the matter under advisement.

*Facts*

On November 2, 2006, Hasan Abdel-Razeq purchased real property located at 7857 Glenister Drive, Springfield, Virginia 22152 ("the Property") for $422,000.00. To fund this purchase, Abdel-Razeq obtained a loan from Mortgageit, Inc. ("Mortgageit"), which was secured by a Deed of Trust.

All papers required for the transaction were prepared by Mortgageit. Included among them was a Signature Affidavit which referenced the production of a driver's license by Abdel-Razeq. All signatures on the Signature Affidavit were written "Hasan Abdel-Razeq" or "Hasan Abdel Razeq." The Signature Affidavit bore the same loan number as the transaction and was obviously prepared as a part of it.

At trial, Abdel-Razeq testified and produced his Virginia Driver's License. The name on it was "Abdel-Razeq, Hasan."

116

For reasons unknown, Abdel-Razeq's typed name on the loan documents prepared by Mortgageit was "Hasan A. Razeq." Yet, all of his signatures on all of the loan documents, including the signature affidavit, were "Hasan Abdel-Razeq." His initials on each page of each document were "HA," not "HR." On November 3, 2006, the Mortgageit Deed of Trust was indexed in Fairfax Land Records under the name, "Razeq, Hasan."

Thereafter, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") was assigned the Mortgageit Deed of Trust.

On February 6, 2007, Abdel-Razeq obtained a credit line with Plaintiff SunTrust Bank ("SunTrust") for $118,400.00 which was secured by a second Deed of Trust on the Property. This second Deed of Trust was recorded in the Fairfax County Land Records under the name "Abdel Razeq, Hasan." Subsequently, Abdel-Razeq defaulted on the Mortgageit/Wells Fargo loan. On November 2, 2007, the Property was sold at a foreclosure sale pursuant to the Mortgageit Deed of Trust.

Prior to the foreclosure sale, Wells Fargo conducted a title search on the property. Because "Razeq" as opposed to "Abdel-Razeq" was the name used for the search, SunTrust's second Deed of Trust was never discovered.

Wells Fargo purchased the Property at foreclosure for $313,500.00. Although Wells Fargo ran two newspaper advertisements regarding the sale, no notice was sent to SunTrust. SunTrust had no knowledge of the foreclosure and did not appear at the foreclosure proceeding.

At trial on May 20, 2009, Abdel-Razeq testified as to what is, in fact, his name. He also produced, as further evidence, his Virginia Driver's License. Based on this testimony and evidence, the Court found that Abdel-Razeq's name is "Hasan Abdel-Razeq."

*Analysis*

SunTrust's Complaint for Declaratory Judgment asserts that Wells Fargo's failure to notify SunTrust of the foreclosure sale violated Virginia Code § 55-59.1(A). As a result of this failure, SunTrust argues that a windfall to Wells Fargo has occurred, as well as an unjust loss to SunTrust.

With respect to priority of the two competing deeds, it is undisputed that the Mortgageit Deed was the primary deed of trust on the Property with SunTrust's interest being secondary. Even though Wells Fargo foreclosed on property not recorded under the correct name of its borrower, SunTrust does not challenge Wells Fargo's superior title to the Property. It only asserts the validity of its secondary position. The fact that Abdel-Razeq was not named on the Mortgageit Deed of Trust had no effect on the priority of Wells Fargo's

interest. Section 17.1-223 of the Code of Virginia treats a deed as validly recorded for purposes of priority if it is "accepted for record and spread on the deed books." Va. Code Ann. § 17.1-223 (2009).

Because priority of the respective deeds is not at issue, the linchpin of this case is the notice requirement set forth in § 55-59.1 of the Virginia Code. Section 55-59.1(A) requires that written notice of sale be given to "any subordinate lienholder who holds a note against the property secured by a deed of trust. . . ." Va. Code Ann. § 55-59.1(A) (2009). However, § 55-59.1(A) further provides that an "*inadvertent* failure to give notice as required . . . shall not impose liability on either the trustee or the secured party." *Id.* (emphasis added). Section 55-59.1(C) also dictates that "failure to comply with the requirements of notice contained in this section shall not affect the validity of the sale." Va. Code Ann. § 55-59.1(C) (2009).

The Restatement of Property states that "[a] valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and *whose holders are properly joined or notified under applicable law*." Restatement (Third) of Prop.: Mortgages § 7.1 (1997) (emphasis added).

> [A] purchaser at a foreclosure sale not only acquires the previous owner's interests in the real estate, but a title free and clear of all other *properly joined interests* that were junior to the foreclosed lien. . . . *Only in the rare instance where the mortgagor is the foreclosure purchaser do fairness and policy considerations dictate a departure from the foregoing principle.*

Restatement (Third) of Prop.: Mortgages § 7.1, cmt. a (1997) (emphasis added).

Two approaches exist with respect to a power of sale foreclosure where a junior interest is not properly noticed. In some states, statutes require that an improperly notified junior interest-holder be treated as it would pursuant to a judicial foreclosure proceeding. Restatement (Third) of Prop.: Mortgages § 7.1 (Reporter's Notes) (1997) (citing West's Rev. Code Wash. Ann. § 61.24.040(7)). In the judicial foreclosure context, "[w]here the holder of a junior interest is not made a party in the foregoing fashion, that interest is neither terminated nor otherwise prejudiced by the foreclosure." Restatement (Third) of Prop.: Mortgages § 7.1, cmt. b (1997). In other states, however, "the situation is complicated by the presence of presumption statutes that are aimed at enhancing the finality of power of sale foreclosure and the marketability of titles it produces . . . such legislation may insulate a *bona fide* purchaser from the claims of a junior interest who was not properly notified."

Restatement (Third) of Prop.: Mortgages § 7.1 (Reporter's Notes) (1997) (citing West's Ann. Cal. Civ. Code § 2924; West's Colo. Rev. Stat. Ann. § 38-39-115; Rev. Code Mont. § 52-410; Nev. Rev. Code Ann. § 107.030(8); Utah Code Ann. § 57-1-28).

It is clear that Virginia follows the latter construction. Even so, § 55-59.1(A) does not apply to the facts of this case.

Here, the Mortgageit Deed of Trust was recorded under the wrong name for Abdel-Razeq. In *Pruitt v. Ferguson,* the Supreme Court of Virginia stated that the "clerk recording a deed acts as the agent of the person offering it for recordation." *Pruitt v. Ferguson,* 224 Va. 507, 513, 297 S.E.2d 714, 717 (1982) (quoting *White v. Himmelberger-Harrison Lumber Co.,* 240 Mo. 13, 25, 139 S.W. 553 (1911)). *Pruitt v. Ferguson* addressed the effect of a misnomer of the grantee in a recorded deed. The court held that grantees are responsible for misnomers in land records and, as the responsible party, are not in a "position to complain of or to take advantage of the resulting confusion." *Id.* at 512. The Supreme Court went on to say that, when this task is done improperly, the consequences "must be borne by the party at whose instance it was done. . . ." *Id.*

Wells Fargo's failure to provide notice to SunTrust was not inadvertent. Wells Fargo, standing in the shoes of its assignor, Mortgageit, never knew the correct name of its borrower." Wells Fargo conceded at trial that its legal position was no different than that of its assignor, Mortgageit. As a result, it did not search under the correct name, "Abdel-Razeq." Ms. Susan Pesner's testimony was extremely helpful as to this point. A recognized authority on real estate law, she said that the search conducted by Wells Fargo prior to the foreclosure under "Hasan Razeq" would not yield or discover "Hasan Abdel-Razeq."

. Wells Fargo, assignee of Mortgageit, was legally responsible for the recordation of the Mortgageit Deed of Trust under the wrong name. That being so, its failure to give notice was not "inadvertent." It never knew, because of its assignor's initial error, to whom to give notice. Accordingly, it enjoys no protection from § 55-59.1(A). Va. Code Ann. § 55-59.1(A) (2009).

In *Pruitt,* the Supreme Court held that the grantees of a deed were responsible for a misnomer in the recordation of that deed and decided "neither they nor any parties claiming under them . . . were in a position to complain of or to take advantage of the resulting confusion." *Pruitt v. Ferguson,* 224 Va. 507, 512, 297 S.E.2d 714, 717 (1982). Here, Mortgageit, and hence Wells Fargo, were responsible for the misnomer. They had the wrong name for their borrower. SunTrust should not suffer the adverse consequences of having its security extinguished because of their error.

Because invalidating the sale would violate § 55-59.1(C), this Court holds that the Property, properly foreclosed upon and now owned by Wells Fargo, nonetheless remains subject to SunTrust's Deed of Trust.

*Final Order*

This matter came before the Court on May 20, 2009. Upon consideration of the arguments made by counsel in court and in their briefs, it is hereby ordered that Plaintiff's Complaint for Declaratory Judgment is granted, and it is further ordered that the Property located at 7857 Glenister Drive, Springfield, Virginia 22152, and now owned by Wells Fargo pursuant to the foreclosure sale of November 2, 2007, is subject to SunTrust's February 6, 2007, Deed of Trust which shall remain on the property until the $118,400.00 owed to SunTrust and secured by the Deed of Trust is paid in full.